**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

FILED
FEB 24 2009
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

CITIGROUP, INCORPORATED,

Plaintiff,

v.

CHEN BAO SHUI,

Defendant.

Civil Action No. 08-0727

**MEMORANDUM OPINION**

This matter comes before the Court on Plaintiff's Motion for Summary Judgment and on the issue of damages.

Plaintiff contends that Defendant registered and used a domain name in violation of the Anticybersquatting Consumer Protection Act. 15 U.S.C.A. § 1125(d) (2006)("ACPA"). Plaintiff seeks damages in the amount allowed by statute and in the form of attorneys fees. Plaintiff acquired in personam jurisdiction over Defendant through successful service of process, and Defendant filed an answer to Plaintiff's complaint.

Plaintiff is a provider of financial services in the United States and throughout the world, and is the registrant and owner of the trademarks CITI and CITIBANK ("CITI marks"). Defendant is a resident of China and was the registrant of record of the domain name CITYBANK.ORG at the time Plaintiff filed this complaint.

Plaintiff has exclusive rights in the CITI marks, has spent substantial sums advertising the marks, and operates its internet banking through such domain names as <citi.com>, <citibank.com>, and <citibankonline.com>. Among other registrations, the mark CITI, U.S. Reg. No. 1,181,467, was registered on December 8, 1981 for "financial services including consumer and commercial lending, credit card services, real estate services, investment and advisory services and providing venture capital to others." The mark CITIBANK, U.S. Reg. No. 691,815, was registered on January 19, 1960 for "banking services," and has been in continual use since February 2, 1959. These CITI marks have been registered in approximately 200 countries throughout the world.

When Plaintiff filed this complaint, Defendant was the named registrant of the domain name <citybank.org>. The domain name was registered with Rebel.com, and is located in the Public Interest Registry in Reston, Virginia.

Sometime after October 13, 1997, Defendant began using the <citybank.org> website to offer a variety of financial services to visitors. On May 28, 2008, visitors to this site were presented with a screen of different options, including "Citibank Student," "Citibank Student Credit Card," and "Citibank Visa." Once a visitor clicked on an option, the website would redirect to either a third-party vendor of these services, or to another screen within the <citybank.org> domain. Clicking on these links

with "citibank" or "citi" in the name did not redirect the user to any website affiliated with Citigroup. For each "click through" from a Defendant's website to a third-party vendor, Defendant would receive compensation from the vendor.

Plaintiff never granted Defendant permission to use the marks CITI or CITIBANK for any purpose.

On February 5, 2008, Plaintiff initiated an arbitration proceeding against Defendant pursuant to the Uniform Domain Name Dispute Resolution Policy, which is incorporated into all domain-name registration agreements. In this proceeding before the National Arbitration Forum ("NAF"), Plaintiff challenged Defendant's use of the following seven domain names: <citifield.com>, <citibankcanada.com>, <citicardscom.com>, <citicorpsjobs.com>, <citifinancial.com>, <citiadvantage.com>, and the domain name at issue here <citybank.org>. At that time, Defendant was the registrant of all the challenged domain names.

Pursuant to Rule 56(c), this Court must grant summary judgment if the moving party demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, this Court views the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Once a motion for summary judgment is properly made and supported, the opposing party then has the burden of showing that a genuine dispute as to any material fact does exist. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 248. "Rule 56(e) requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

To establish a violation of the ACPA, Plaintiff must show (1) that defendant had a bad faith intent to profit from using the domain name; and (2) that the domain name at issue is identical or confusingly similar to, or dilutive of, plaintiff's distinctive or famous mark. See People for Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 367 (4th Cir. 2001) (citing 15 U.S.C. § 1125(d)(1)(A) (2006)).

The ACPA provides nine nonexclusive factors which support a finding of bad faith intent:

> In determining whether a person has a bad faith intent . . . a court may consider factors such as, but not

> limited to--(I) the trademark or other intellectual property rights of the person, if any, in the domain name; (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person; (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site; (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct; (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct; (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others . . .; and (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous. . .

15 U.S.C. § 1125(d)(1)(B)(i)(I)-(IX) (2006). The statute also establishes a safe harbor providing that "[b]ad faith intent...shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." Id.

Plaintiff has successfully established that Defendant used
the disputed domain name in bad faith.  The bad faith elements
listed in the ACPA establish that Defendant used this domain name
in a bad faith effort to profit from Plaintiff's marks.  First,
Defendant does not have any trademark or other intellectual
property rights in the domain name.  Defendant's registration of
the domain name is not sufficient to establish these rights.
Second, the domain name consists of the legal name of Plaintiff
Citibank with the one alteration of an "i" being replaced with a
"y."  Further, the domain name is not the legal name of, nor any
name that is otherwise used to identify Defendant.  Third,
Defendant has not engaged in prior use of the disputed domain
name <citybank.org> in connection with the bona fide offering of
any goods or services prior to registering the domain name.
Fourth, Defendant's use of the domain name was commercial in
nature.  Notably, some of the advertisements on Defendant's site
are exact replicas of Plaintiff's marks CITIBANK and CITI such
as: "Citibank Business Account," and "Citibank Accounts Online."
Each click through provided Defendant with advertising revenue,
even though clicking on a link with Citibank in the title does
not redirect the user to any website affiliated with Plaintiff.
Fifth, Defendant clearly intended to confuse, mislead and divert
internet traffic from Plaintiff's official website to his own in
order to garner more "click through" revenue from the misleading

"citibank" advertisements. Sixth, subsequent to the filing of the complaint in this case, Defendant sold the domain name for financial gain to a third-party in an apparent effort to avoid liability. Defendant has also violated the eighth and ninth factors; namely, Defendant has registered other internet domain names which are identical or similar to Plaintiff's marks, and the CITIBANK mark was distinctive and famous at the time Defendant registered the disputed domain name.

Furthermore, this Court is unable to make a determination that Defendant's use of the disputed domain name fell within the safe harbor created by the ACPA. Specifically, Defendant had no reasonable grounds to believe that his use of the domain name was fair or otherwise lawful.

Plaintiff has also established that the domain name at issue is identical or confusingly similar to, or dilutive of, plaintiff's distinctive or famous mark. See Doughney, 263 F.3d at 367; and 15 U.S.C. § 1125(d)(1)(A) (2006). In his answer to Plaintiff's complaint, Defendant argues that the arbitration decision by the NAF ought to govern this portion of the Court's analysis. However, the NAF "panelist's decision is relevant only to serve as the reason for [Plaintiff's] bringing an action under § 1114(2)(D)(v) to reverse the . . . panelist's decision." Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona, 330 F.3d 617, 626 (4th Cir. 2003).

The domain name <citybank.org> is confusingly similar to Plaintiff's famous mark CITIBANK and liability under the ACPA is appropriate. Courts in the Fourth Circuit consider seven factors when establishing the likelihood of confusion under the trademark statute:

> 1) the strength or distinctiveness of the mark; 2) the similarity of the two marks; 3) the similarity of the goods/services the marks identify; 4) the similarity of the facilities the two parties use in their businesses; 5) the similarity of the advertising used by the two parties; 6) the defendant's intent; 7) actual confusion.

Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1984). Plaintiff has been using the CITIBANK mark for over fifty years in affiliation with financial services it offers worldwide. The CITI marks are registered in over 200 countries, and this Court finds that the marks are distinctive. The CITIBANK mark and the disputed domain name <citybank.org> are identical but for the replacement of an "i" with a "y," and both Plaintiff and Defendant offer a variety of financial services. Plaintiff uses the CITIBANK mark in domain names to offer customers online financial services, and Defendant used the disputed domain name to offer visitors online financial services. As described above, this Court finds that Defendant intended to use the disputed domain name in bad faith to profit from Plaintiff's CITI marks. Based on these factors, this Court finds that the disputed domain name is confusingly similar to Plaintiff's marks.

Even viewing the facts in a light most favorable to
Defendant, Plaintiff has established that Defendant violated the
ACPA and that no genuine issue as to any material fact remains
for trial.

Plaintiff asks this Court for (1) a permanent injunction
enjoining Defendant from infringing on Plaintiff's trademarks;
(2) statutory damages against Defendant in the amount of
$100,000; and (3) attorneys fees and costs.

The ACPA allows plaintiffs to pursue statutory damages
providing that "the plaintiff may elect, at any time before final
judgment is rendered by the trial court, to recover, instead of
actual damages and profits, an award of statutory damages in the
amount of not less than $1,000 and not more than $100,000 per
domain name, as the court considers just."   15 U.S.C. § 1117(d)
(2006).   Further, under section 1117(a), the Court has discretion
to award reasonable attorneys' fees in exceptional cases.   15
U.S.C. § 1117(a) (2006).   Courts have determined that
"exceptional cases" include cases involving willful and
deliberate infringement by a defendant.

This Court finds that Defendant is liable to Plaintiff for
registering and using the disputed domain name in violation of
the ACPA.   It is the opinion of this Court that Plaintiff is
entitled to a permanent injunction against Defendant.   Further,
Defendant's violative use has been established as sufficiently

willful, deliberate, and performed in bad faith to merit the maximum statutory award of $100,000 and an award of attorneys' fees.

For the reasons stated above, Defendant is entitled to summary judgment and damages.

An appropriate Order shall issue.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
February 24, 2009